# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| **BETTY J. JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CAUSE NO. 1:18-cv-00421-SLC** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY**, *sued as Andrew M. Saul,* | ) | |
| *Commissioner of the Social Security* | ) | |
| *Administration,*[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Betty J. Jones appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[2] (ECF 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Jones applied for SSI in March 2017, alleging disability as of February 25, 2017. (ECF 7 Administrative Record ("AR") 18, 247-52). Jones's application was denied on initial consideration and on reconsideration. (AR 118-47). A hearing was held on July 23, 2018, before administrative law judge ("ALJ") Fredric Roberson, at which Jones, who was represented by counsel, and a vocational expert testified. (AR 32-64). On August 9, 2018, the ALJ rendered an unfavorable decision to Jones, concluding that she was not disabled because she could

---

[1] Andrew M. Saul is now the Commissioner of Social Security, *see, e.g., Saunders v. Saul*, 777 F. App'x 821 (7th Cir. 2019); *Michael T. v. Saul*, No. 19 CV 1519, 2019 WL 3302215, at *1 n.2 (N.D. Ill. July 23, 2019), and thus, he is automatically substituted for Nancy A. Berryhill in this case, *see* Fed. R. Civ. P. 25(d).

[2] All parties have consented to the Magistrate Judge. (ECF 10); *see* 28 U.S.C. § 636(c).

perform a significant number of unskilled, light-exertional jobs in the economy despite the limitations caused by her impairments. (AR 18-26). The Appeals Council denied Jones's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Jones filed a complaint with this Court on December 18, 2018, seeking relief from the Commissioner's final decision. (ECF 1). In this appeal, Jones argues that: (1) the ALJ failed to properly evaluate her obesity, and (2) the physical residual functional capacity ("RFC") assigned by the ALJ is not supported by substantial evidence or adequately articulated. (ECF 18 at 10).

At the time of the ALJ's decision, Jones was 50 years old (AR 247); had attended four years of college (AR 37, 267); and had past work experience as a cashier and a supervisor at a fast food restaurant, neither of which constitutes past relevant work. (AR 25, 268). In filing her application for SSI, Jones alleged disability due to the following impairments: chronic back pain, depression, anxiety, post traumatic stress disorder ("PTSD"), hypertension, and "[m]ental and back issues." (AR 266).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial

evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### A. *The Law*

Under the Act, a claimant is entitled to SSI if she establishes "[she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments

3

listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.³ *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

## B. The Commissioner's Final Decision

On August 9, 2018, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 18-26). At step one of the five-step analysis, the ALJ found that Jones had not engaged in substantial gainful activity since her application date, March 9, 2017. (AR 20). At step two, the ALJ found that Jones had the following severe impairments: depression, PTSD, and "subjective reporting of lumbar spine condition." (*Id.*). At step three, the ALJ concluded that Jones did not have an impairment or combination of impairments severe enough to meet or equal a listing. (*Id.*).

Before proceeding to step four, the ALJ determined that Jones's assertion of a complete inability to work was "not entirely consistent" with the medical evidence and other evidence of record. (AR 23). The ALJ assigned her the following RFC:

---

³ Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 416.920(e).

4

> [T]he claimant has the [RFC] to perform "light" work as defined in
> 20 CFR 416.967(b) except can stand and/or walk four hours in an
> eight-hour workday; frequently climb stairs and ramps; never
> climb ladders, ropes, or scaffolds; occasional balancing; occasional
> stooping, kneeling, crouching, and crawling; can understand,
> remember, and carry out simple instructions; cannot perform work
> requiring a specific production rate, such as assembly line work;
> and occasional interaction with the general public.

(AR 22). The ALJ found at step four that Jones had no past relevant work. (AR 25). At step five, based on the RFC and the vocational expert's testimony, the ALJ concluded that Jones could perform a significant number of unskilled, light-exertional jobs in the economy, including office helper (80,000 jobs nationally), small parts assembler (125,000 jobs nationally), and inspector (88,000 jobs nationally). (AR 26). Accordingly, Jones's application for SSI was denied. (AR 26).

### C. Obesity

Jones first argues that the ALJ failed to properly evaluate her obesity and that such error necessitates a remand of this case. (ECF 18 at 13-15). Jones's argument is unpersuasive, at least in part.

During the period of March 2016 to February 2018, Jones had a body mass index ("BMI") ranging from 32 to 38, with her weight varying from 208 to 238 pounds. (*See* AR 321, 323, 328, 330, 445, 504, 537, 539, 655, 835). Jones does not point to any medical source of record who assigned her any physical limitations based on her obesity. (ECF 18 at 13-15). However, in a psychiatric evaluation in January 2017, Dr. Santosh Maharjan, a psychiatrist, checked "Yes" in response to whether Jones's weight issues impact her well being. (AR 494). Dr. Maharjan did not otherwise mention Jones's obesity in the eight-page evaluation, and the narrative section of Dr. Maharjan's note reflects that Jones was experiencing stress relating to a

5

pending eviction from her apartment. (AR 490-97).

As the parties acknowledge, the ALJ did not expressly reference obesity or BMI in his decision. (ECF 18 at 13-14; ECF 19 at 4). Jones contends that the ALJ's failure to explicitly mention and analyze her obesity in the five-step sequential determination constitutes a reversible error; the Commissioner disagrees. In that regard, "[a]n ALJ must factor in obesity when determining the aggregate impact of an applicant's impairments." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (citations omitted); *see Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) ("According to SSR 02-1p, an ALJ should consider the effects of obesity together with the underlying impairments, even if the individual does not claim obesity as an impairment." (citation omitted)); SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002). Of course, "an ALJ must consider all of the evidence and must explain its decision such that it may be meaningfully reviewed." *Arnett*, 676 F.3d at 593 (citations omitted). Accordingly, "[i]f the ALJ thought that [Jones's] obesity ha[d] not resulted in limitations on her ability to work, he should have explained how he reached that conclusion." *Id.*

But the Seventh Circuit Court of Appeals has further clarified that a failure to explicitly discuss obesity may be harmless error if the ALJ "indirectly took obesity into account by adopting limitations suggested by physicians who were aware of or discussed [the claimant's] obesity." *Id.* (citations omitted); *see Proschaska*, 454 F.3d at 736. In *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004), the ALJ did not specifically mention the claimant's obesity but did adopt the limitations opined by the specialists and reviewing physicians who were aware of the condition. The Seventh Circuit concluded that the ALJ's adoption of those physicians' opinions, together with the claimant's failure to specify how his obesity further impaired his

6

ability to work, made the error harmless because the claimant's obesity "was factored indirectly into the ALJ's decision as part of the doctors' opinions." *Id.* The Seventh Circuit arrived at the same conclusion when faced with a similar scenario in *Proschaska*, 454 F.3d at 736-37. *See also Dornseif v. Astrue*, 499 F. App'x 598, 600 (7th Cir. 2013) ("[A]n ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work, and Dornseif did not mention her obesity at any juncture of her application process." (citation omitted)).

The instant circumstances are analogous to those presented in *Skarbek*, *Proschaska*, and *Dornseif*. Here, Jones did not contend in her application that she was disabled due to obesity. (AR 266). Nor was obesity alleged in the list of "medically determinable severe impairments" in her attorney's brief submitted to the ALJ prior to the administrative hearing. (AR 317). Furthermore, at the hearing Jones testified as to her current weight, but she did not describe any obesity-related limitations that impacted her ability to work. (AR 36). Furthermore, the ALJ discussed and relied upon, at least in part, the opinions of Dr. M. Ruiz and Dr. J.V. Corcoran, the state agency physicians, who were aware of Jones's weight and BMI and still concluded that she could perform medium-exertional work. (AR 24, 118, 124-25, 132, 140-41). That the ALJ ultimately afforded greater deference to Jones's alleged back pain and more conservatively limited her to light-exertional work was well within the ALJ's purview to do. (AR 24); *see Bates v. Colvin*, 736 F.3d 1093, 1100 n.4 (7th Cir. 2013) ("[T]he extent of what a claimant can do despite her limitations is committed to the exclusive discretion of the ALJ." (citing 20 C.F.R. §§ 404.1527(d), 404.1545(a)(1))); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the

opinions [of] any of the claimant's physicians." (citation omitted)).

Jones also suggests that the ALJ materially erred by failing to consider that Dr. Maharjan, her psychiatrist, indicated in a check-the-box manner that her weight "impacts her well-being." (ECF 18 at 9 (citing AR 494)). But Dr. Maharjan did not elaborate as to how or to what extent Jones's weight impacts her mental health; rather, as stated earlier, in his narrative notes Dr. Maharjan linked Jones's stress to her pending eviction. (AR 490-91); *see* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). In any event, neither Dr. Maharjan nor any other mental health provider assigned Jones any mental limitations linked to her obesity. And as already explained, Jones never states how her obesity hinders her ability to work from a mental health perspective, nor did she did mention her obesity at any juncture of the application process. Consequently, the ALJ's failure to explicitly discuss Dr. Maharjan's vague comment on the psychiatric evaluation does not constitute reversible error, as "any remand for explicit consideration of [Jones's] obesity would not affect the outcome of this case." *Skarbek*, 390 F.3d at 504 (citation omitted); *see also Dornseif*, 499 F. App'x at 600.

In sum, while the ALJ should have explicitly discussed Jones's obesity, his failure to do so is, at most, harmless error, as Jones's obesity was factored indirectly into the ALJ's decision though the opinions of the state agency physicians. Therefore, Jones's first argument does not require a remand of the Commissioner's final decision.

### D. The RFC

Jones also argues that the physical RFC assigned by the ALJ is not supported by

8

substantial evidence or adequately explained. Specifically, she contends that the ALJ erred in finding that she could climb ramps and stairs frequently, and balance, crouch, kneel, and crawl occasionally. (ECF 18 at 15). Jones's challenge to the RFC, however, is unavailing.

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted). That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 416.945(a)(3). Therefore, when determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). "The ALJ need not provide a written evaluation of every piece of evidence, but need only 'minimally articulate' his reasoning so as to connect the evidence to his conclusions." *Knox v. Astrue*, 327 F. App'x 652, 657-58 (7th Cir. 2009) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011).

Jones argues that given her obesity, back pain, and cardiac history, "the ALJ's RFC does not pass the logical bridge test." (ECF 17 at 17). But in her brief, Jones fails to cite to any

9

medical opinion or evidence of record in support of her argument. (*See id.* at 15-17). The ALJ, on the other hand, explained what evidence did or did not support his conclusion. As to her alleged back pain, the ALJ observed that there is no evidence of record that Jones underwent medical imaging or treatment for her back pain complaints. (AR 24); *see Ellis v. Astrue*, No. 2:09-cv-145, 2010 WL 3782265, at *20 (N.D. Ind. Sept. 30, 2010) (affirming the ALJ's discounting of the claimant's complaints given the discrepancies between the severity of her self-reported symptoms and the lack of treatment for the purported condition).

The ALJ did consider that Jones told Dr. Vijay Kamineni, who saw her for a "disability physical" in October 2017, that her pain was a "ten" on a ten-point scale, and that she could not bend over to tie her shoes or pick up a coin. (*Id.* (citing AR 550)). Notably, Jones was not taking any prescription pain medication for her back pain at the time. (AR 553). The ALJ thoroughly discussed Dr. Kamineni's opinion but ultimately gave it only "some" weight, accurately assessing that it "merely reiterates the claimant's subjective statements, which are not supported by the examination notes or by the overall record." (*Id.*); *see Rice*, 384 F.3d at 371 ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints."). An ALJ is entitled to discount a medical source opinion that is based upon the claimant's subjective report of symptoms, rather than medically acceptable clinical and laboratory diagnostic techniques. *See Bates*, 736 F.3d at 1100; *Smith v. Apfel*, 231 F.3d 433, 440 (7th Cir. 2000). In any event, while Dr. Kamineni documented some reduced range of motion in Jones's back, he did not assign her any postural limitations. (AR 24, 553, 555).

The ALJ also considered that Dr. Thomas Miller in 2018 assessed that Jones had

intervertebral disc degeneration. (AR 24 (citing 655)). But again the ALJ considered that there was no medical imaging of record to support that diagnosis. (*Id.*); *see Scruggs v. Colvin*, 2:13-cv-0047-AKK, 2014 WL 4187442, at *4 (N.D. Ala. Aug. 18, 2014) (affirming the ALJ's discounting of a physician's opinion where the physician had no medical imaging to support the diagnosis he assigned); 20 C.F.R. § 416.927(c)(3). In any event, Dr. Miller did not assign Jones any limitations based on the diagnosis of intervertebral disc degeneration. (*See* AR 654-55). "The issue for disability benefits is not whether a claimant has a disease, but whether that disease affects her ability to work." *Bucholz v. Astrue*, No. 08-cv-4042, 2009 WL 4931393, at *11 (C.D. Ill. Dec. 15, 2009) (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)); *see Estok v. Apfel*, 152 F.3d 636, 639-40 (7th Cir. 1998) (noting that, whatever the diagnosis, the claimant must provide sufficient evidence of actual disability).

Also, while Jones rated her pain an "eight" in January 2018, she was not taking any prescription medications for her back pain, and by the following month she rated her pain as a "four." (AR 653, 655). Furthermore, in February 2018, an evaluation by another provider revealed that Jones had normal strength, full range of motion, a normal straight leg raise test, and her back was nontender to palpation. (AR 24, 790). Therefore, Jones's medical records from 2018 also do not reveal any assigned back limitations. "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [her] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)); *see also Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citing 20 C.F.R. §

416.912(c)).

Moreover, as discussed *supra*, the ALJ considered the opinions of Dr. Ruiz and Dr. Corcoran, the state agency physicians, who reviewed the record in October 2017 and January 2018, respectively, and concluded that Jones could perform medium-exertional work. (AR 24, 124-25, 140-41). In particular, Dr. Ruiz and Dr. Corcoran opined that Jones could occasionally climb ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, crawl, and climb stairs and ramps. (AR 124-25, 140-42); *see generally* 20 C.F.R. § 416.967(c) ("If someone can do medium work, we determine that he or she can also do sedentary and light work."). The ALJ gave partial weight to these opinions. (AR 24); *see generally Ottman v. Barnhart*, 306 F. Supp. 2d 829, 839 (N.D. Ind. 2004) ("The regulations, and this Circuit, clearly recognize that reviewing physicians and psychologist[s] are experts in their field and the ALJ is entitled to rely on their expertise."); 20 C.F.R. § 416.927(f)(2)(i). The ALJ explained that in deference to Jones's back pain, he assigned her even more conservative limitations than those assessed by Dr. Ruiz and Dr. Corcoran. (AR 24 ("Limiting the claimant to light, rather than medium, work provides for a less strenuous capacity that would avoid exacerbating lower back pain, when present. Postural limitations do the same.")). Accordingly, the ALJ limited Jones in the RFC to frequently climbing stairs and ramps but never climbing ladders, ropes, or scaffolds; and occasionally balancing, stooping, kneeling, crouching, and crawling. (AR 22).

As explained earlier, "[an] ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt*, 496 F.3d at 845. Rather, "the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014)

(citing 20 C.F.R. § 404.1527(d)).  In doing so, the ALJ "must consider the entire record, including all relevant medical and nonmedical evidence," and thus, he "need not accept only physicians' opinions."  *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) ("Of course the administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence—which need not itself be medical in nature . . . .").  Here, the ALJ considered not only the medical evidence but also the lack thereof—specifically, the lack of medical imaging and the lack of treatment relating to Jones's back pain, which she claimed had started six years earlier.[4]  (AR 23-24); *see Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record." (citation omitted));  *Hall v. Barnhart*, No. 1:04-cv-1847-DFH-TAB, 2006 WL 3206096, at *4 (S.D. Ind. June 15, 2006) (explaining that the lack of objective medical evidence is one factor to be considered by the ALJ when assessing a claimant's symptom testimony).  Thus, the Court can easily trace the ALJ's reasoning from the evidence of record to the assigned RFC.

In any event, Jones does not dispute the Commissioner's assertion that one of the three representative occupations identified by the vocational expert at step five, small parts assembler, does not require *any* climbing, balancing, stooping, kneeling, crouching, or crawling.  (ECF 19 at 13).  Specifically, the Commissioner represents that the Dictionary of Occupational Titles "indicates that these postural activities are 'not present,' meaning that the 'activity or condition does not exist' for the job."  (*Id.* (citing DICOT 706.684-022, 1991 WL 679050 (Jan. 1, 2016))).

---

[4] Jones does not challenge the ALJ's discounting of her symptom testimony (*see* ECF 18 at 13-17; ECF 20 at 3), and thus, she has waived any such argument.  *See Swanson v. Apfel*, No. IP 99-1159-C H/G, 2000 WL 1206587, at *4 (S.D. Ind. Aug. 7, 2000) (acknowledging that a claimant waives an argument by failing to raise it in her opening brief).

The vocational expert estimated that there were 125,000 small parts assembler jobs in the national economy (AR 59), which is a significant number for purposes of step five. *See Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("As few as 174 jobs has been held to be significant, and it appears to be well-established that 1,000 jobs is a significant number." (citations omitted)); *see Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) ("Lee's contention that 1,400 job positions are not a significant number is unsupported by caselaw."). A claimant who can perform even one occupation existing in significant numbers in the national economy is not disabled. *See Coleman v. Astrue*, 269 F. App'x 596, 602 (7th Cir. 2008) (affirming the ALJ's step-five finding where the claimant could perform one occupation existing in significant numbers); 20 C.F.R. § 416.966(b) (stating that a claimant is not disabled if she can perform a significant number of jobs "in one or more occupations" in the national economy). Consequently, Jones's second argument also does not merit a remand of this case. Therefore, the Commissioner's final decision will be affirmed.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Jones.

SO ORDERED.

Entered this 30th day of March 2020.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge